THE REPRESENTATIVE OF THE POPULAR DEMOCRATIC PARTY, MEMBER OF THE COMMONWEALTH BOARD OF ELECTIONS, ARCILIO ALVARADO, Petitioner, *v.* THE COMMONWEALTH BOARD OF ELECTIONS OF PUERTO RICO, WALTER BUSÓ, CHAIRMAN IN OFFICE AND ACTING GENERAL SUPERVISOR OF ELECTIONS, Respondent.

Nos. 23 and 24.          Decided September 1, 1972.

*Arcilio Alvarado, pro se,* Member of the Commonwealth Board of Elections. *Gilberto Gierbolini, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for the Commonwealth Board of Elections.

DECISION OF MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ.
(Given in open court on September 1, 1972.)

The following is, the determination or the Decision of the Chief Justice on appeals Nos. 23 and 24 which are under his consideration, in which petitioner is Mr. Arcilio Alvarado, the member of the Commonwealth Board of Elections that represents the Popular Democratic Party, against the Commonwealth Board of Elections—on decision of its Acting Supervisor—regarding two instructions included in the Manual of Instructions adopted by the Board on the 16th of last August,

as a set of instructions to the officers of the polling places who will act in the general election of the coming November 7 in Puerto Rico.

■ As it was well indicated by the colleagues that argued these appeals—petitioner himself and Mr. Gilberto Gierbolini, Solicitor General—it is not the first time that the Commonwealth Board of Elections adopts a Manual of Instructions for the Officers of the Polling Places. I have only been able to revise and examine the Manuals of Instructions since the year 1960 to the present time; but prior thereto the Board had also adopted similar Manuals of Instructions for the Officers of the Polling Places. The purpose of said Manual is to carry to the Officers of the Polling Places the message of the Commonwealth Board of Elections—each of the principal political parties or parties by petition being represented therein—through those instructions, as directives of the consensus of the members of the Board, and to guide them for the better fulfillment of the duties which they are called upon to perform on election day, when the voting and counting of votes take place.

■ In the first place, I want to state that it is not a question, as the colleagues properly pointed out, of regulations that have the force of law—which are dispersed in the Election Law, and which here, it is sought to concentrate them in such a manner that they may be understood by persons who are not experts in Law and who have to carry out a duty involving great responsibility in the respective commission entrusted to them by law. The Chief Justice is aware of the genuine preoccupation of the members of the Commonwealth Board of Elections—as it was of the previous Boards—that the electoral process be conducted in an orderly manner and in conformance with law, and that thus, effect be given to the citizen's right to vote, as the ground on which our system of government and democratic life is based.

These two appeals deal with two specific instructions. It is the criterion of the Chief Justice that this type of directive to the Officers of the Polling Places is the one in which, par excellence—and overcoming criteria that can be dissimilar in all respects as to which the unanimity of the members of the Board may be attained—such unanimity should exist in the instructions as a whole; for what the image of the Commonwealth Board of Elections represents with respect to the Officers of the Polling Places, and for it to carry the weight without noticeable discrepancies of that consensus pursuant to the provisions of law.

I have given consideration to petitioner's contentions and to the Board's contentions. I have examined the transcripts of the meetings in which this Manual was the object of discussion. I have carefully examined the applicable provisions of law, as well as the Manual in its entirety and especially the challenged instructions, likewise I have examined the previous Manuals.

■ The Chief Justice assumes jurisdiction over these appeals because it is not a question by itself of a regulatory type of action by the Board, that in essence—as I have indicated in previous Appeals—is of a legislative nature and has another channel for its expression. Once any rule or regulation has been adopted by the Board, in order to give effect and the force of law to the same it must be approved by the Governor.

I

*Appeal Number 23*

In Appeal Number 23, the challenged instruction which gave rise to the appeal in said Petition and which was approved by the Board with the opposite vote of the representative of the Popular Democratic Party—once the reservations which appear in record as to the absence of the representative of the Puerto Rican Independence Party were made

by colleague Alvarado at the beginning of his statement—says, under the title *Officers of the Polling Places*, after talking about the Inspectors and the Secretaries and under the heading or subtitle of *Challengers: "They are responsible to see to it that every person coming to vote at the Polling Place is a qualified voter, according to the rules hereinafter established."* The instruction appears thus, in the typewritten copy of the Manual which the Board presented, at page 6 of same. Further on, on pages 18 to 23 both included, the duties of the challengers are enumerated under the heading *Challenger*.

■ The challenged instruction to which I have referred in this Appeal No. 23 is, to my judgment, improper at law, because in accordance with its context, it places on the challenger, with exclusive character, the responsibility to see to it that every person appearing to vote be a qualified voter, entailing the connotation that in order to discharge that responsibility the challenger has, as an affirmative obligation, to verify the qualifications of every person coming to the polling place to vote, the qualification to vote, this is, his qualifications to be a voter. In an officer zealous in the fulfillment of his obligation or duty, the Board's directive, as implied in that instruction—because of its absolute terms of responsibility —may lead that officer to act as a continuous censor of the voter's right to vote, at the same instance of the voting, in order to affirmatively ascertain that the requirements for qualification as voter concur in each and every one of the persons who appear to exercise that right.

The purpose which the law pursues through all the regulations of the right to vote is to obtain the greatest purity in the electoral process—including preeminently the voting stage and the subsequent counting of votes, which is the final stage, at that level, of the different stages in the exercise of the right to vote. The culminating point for the citizen, for the voter, is the voting.

■ The voter who appears registered in the electoral lists of a polling place—as a result of all previous regulations and the fulfillment of all the requirements and steps provided by the Election Law in order to become registered as a voter and to appear in the list of the polling place where he is assigned to vote—is accompanied by the presumption that up to that instant he has complied with all the demands and requirements of law, and he is a qualified voter. It is by way of exception and as part of the general purpose pursued by the regulations of the right to vote that a challenger designated by each political party is conferred the right to challenge the vote of a person who appearing in the electoral lists of the polling place does not meet according to his best judgment, and with information that may lead him to legitimately suppose that such person does not meet some of the requirements to be a voter by reason of any of the causes expressly established and enumerated by law. This right to challenge cannot be exercised viciously or unjustly, because it would entail criminal penalty for the challenger; just as it would likewise entail criminal penalty for a voter or for any person who, not meeting the requirements to be a voter, attempts to vote illegally.

The duties of a challenger according to the provisions of law; his right to challenge under oath a person who tries to vote without being a qualified voter or without being a person whose name appears registered in the lists of voters of the polling place; the process of challenging or of identification of such persons; the causes or reasons on account of which it is possible to challenge, and the manner of marking the challenged ballot, all appear in the subsequent instructions, from page 18 to page 24 of the Manual of Instructions approved by the Board.

The challenged instruction may create in the challenger during the voting process itself—that is when the challenger acts and not before or after—the compulsion to intervene

with all persons who go to the polling place to vote, and thus invariably ascertain, as a routine, in his own way and understanding, the qualifications of each one of the persons who go to the polling place to vote and discharge the responsibility vested upon him by the directive contained in the instruction. Said instruction tends to define in synthesis the duties of the challenger, but makes it in a context that exceeds the ambit limited by the law as to his intervening steps while the voting process takes place.

It is on the foregoing grounds that the Chief Justice deems that the challenged instruction cannot prevail and must be set aside. The further disposition with respect to this Appeal No. 23 will be made once we have referred to Appeal No. 24.

## II

### *Appeal Number 24*

The instruction challenged in the Petition for Appeal No. 24 appears at page 11 of the Manual under the title *Duties in Connection With the Voting Process*, and it is part of paragraph 2 of that title, insofar as the persons who go to the polling place, with the corresponding papers to vote preferently or under affidavit, are concerned. The part specifically challenged is the sentence in that paragraph that reads: "Before the said person deposits the ballot in the ballot box, the chairman of the Poll Board will take the ballot without opening it and mark on its back 'challenged ballot' for having voted preferently or under affidavit, and he will attach to same the preference certificate or the affidavit which was delivered to him by the voter."

The previous instruction, although intended to expedite the procedure in the official challenges of the preference or under affidavit votes, and relies on the condition of the chairman of the Polling Board—as provided in the Election Law, regarding which of the inspectors will preside said

Board—and has also the purpose of facilitating the best order of the work at the table, it could limit, nevertheless, the right of the other inspectors of the Polling Board to the execution of the act which pursuant to said instruction is to be exclusively exercised by the Chairman of the Polling Board.

The Commonwealth Board of Elections having stated during the course of today's arguments—through its learned representative, the Solicitor General—that that instruction which has been adopted and gave rise to this Appeal No. 24, as drafted, does not prevent any other of the inspectors from making the mark on the back of the respective ballots in the cases to which the said instruction refers, the Chief Justice deems that for the sake of more precision and to avoid any uncertainties during the voting process, the said instruction should be the object of further consideration by the Board, to overcome the excluding limitation that the same establishes in its context regarding the other inspectors.

### III

#### *Disposition*

Even when the final adoption of this Manual should not be delayed, and its publication and timely distribution to the officers to whom it is directed should reach them as soon as possible, according to the rules of the Board itself, the Chief Justice deems that in *both appeals* the instruction adopted by the Board should be set aside for the only purpose that the Board may, in Appeal No. 23, determine if an instruction in the matter like the one challenged is necessary, and how should it be substituted to its satisfaction, as it would be desirable, having the consensus of all members of the Board.

For the reasons stated at the beginning of this exposition it is proper, regarding the instruction which gave rise to Appeal No. 24—for the purpose of seeking to avoid the excluding

limitations which could give rise to uncertainties, when the members of the Board do not desire that there be uncertainties in the development of the electoral process which has its culmination in the voting on election day—to set it aside, and for that purpose, to remand the case. The Board, in both cases, without delay and as soon as possible, should pass on what in its judgment, the directive, if any, should be in each of those cases, and its scope, so as to attain what has been the purpose of the Board since the commencement of the preparation of these Manuals of Instructions for Electoral Officers: the high and constructive objective of giving to the officers of the polling places, in the simplest manner possible, the due orientation for the best performance of their duties.

I do not think that there is any question of semantics involved, and it should not be cause for discrepancy between the members of the Board. The common purpose of attaining the objective that there be no uncertainty or incidents in the application of the law and in the performance and discharge of the duties of the different electoral officers on election day —as it has been so far—could possibly entail the yielding in part in the manner of expression, inasmuch as each person may have his own way of expressing an idea, the arrangement of the different instructions in the Manual, and even the procedure to produce the same. Those scruples—if they could be called that way—should be avoided to obtain the unanimous agreement of the Board and to maintain before the officers of the polling places, the officers of the Local Boards and all the people of Puerto Rico the image of the Commonwealth Board of Elections, in its best desire of implementing the electoral right of the citizens in the most effective, orderly, and peaceful manner possible.

This is the Decision of the Chief Justice which with the corrections of expression or style, which would be necessary upon being transcribed and signed, constitutes from this moment the Official Decision in these two Appeals. As it is

natural, the process of transcript and further notice is required; but at this moment the members of the Board who are present and the representation of the Board itself are informed of the reasons and grounds on which the Decision in each one of the Appeals is based, and of the order that they be remanded to the Board for their consideration as soon as possible.

This Decision shall be transcribed and each of the records 23 and 24 will be completed therewith, and notice thereof will be served on the Board through the Solicitor General, and on the Members of the same as representatives of the different political parties.

With this Decision the meeting called for today comes to an end.

Given in open court, at San Juan, Puerto Rico, September 1, 1972.

It was so ordered as witnesses the signature of the Chief Justice.

(s) Luis Negrón Fernández
*Chief Justice*

I Attest:

(s) José L. Carrasquillo
*Clerk*